**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SHAWN HAMLETT,

       Petitioner,

v.                                    Case No. 8:13-cv-1923-T-33AEP

SECRETARY, DEPT. OF CORRECTIONS,

       Respondent.

_____

## <u>ORDER</u>

Petitioner Shawn Hamlett, an inmate in the Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). He challenges his convictions entered in the Sixth Judicial Circuit, Pinellas County, Florida, in 2007. Respondent filed a response (Doc. 15), and Hamlett filed a reply (Doc. 18). Upon review, the petition must be denied.

**PROCEDURAL HISTORY**

A jury convicted Hamlett of attempted robbery with a firearm (count one) and attempted second degree murder with a firearm (count two). (Ex. 1, Vol. II, pp. 302-308.) He was sentenced as a prison releasee reoffender to concurrent terms of fifteen years in prison with a fifteen-year minimum term on count one, and thirty years in prison with a thirty-year minimum term on count two. (Id., pp. 329-31.) The state district court of appeal *per curiam* affirmed the judgment and sentence. (Ex. 5.) Hamlett's motion for rehearing and/or clarification was denied. (Exs. 6, 7.)

Hamlett filed a motion for postconviction relief under Florida Rule of Criminal

Procedure 3.850.  (Ex. 12.)  The state postconviction court entered an order denying some of the claims and directing the State to respond to the remaining claims.  (Ex. 13.)  Hamlett then filed a supplement to his postconviction motion, which raised five additional claims, as well as a reply to the State's response.  (Exs. 15, 16.)  The state postconviction court summarily denied all of Hamlett's outstanding claims.  (Ex. 17.)  The denial of Hamlett's postconviction claims was *per curiam* affirmed by the state district court of appeal.  (Ex. 20.)  Hamlett's motion for rehearing was denied.  (Exs. 21, 22.)  Respondent does not contest the timeliness of Hamlett's federal habeas petition.

## FACTS[1]

On March 25, 2005, Rosa Pereira and Lisa Hodges were working at Payday Now, a cash advance business located on 4th Street North in St. Petersburg, Florida.  Hamlett, carrying a paper bag, entered the store shortly before closing.  He asked Pereira if she cashed checks, and Pereira told him she did not.  He pulled a gun out of the bag, pointed the gun at Pereira, and yelled at her to go to the safe.  Hodges, who was in an office while this occurred, slammed the office door closed.  While Hamlett pointed the gun at Pereira, she told him she could not open the safe because it was behind the door. Pereira ran out the front door when Hamlett turned and walked away from her.  A child, who was a relative of Hodges, was also inside the building but escaped through the front door.

Hodges, inside the office, could see Hamlett through a television monitor. She was also able to hear his voice.  Hodges called 911.  Hamlett demanded that the door and safe be opened.  Hodges heard him say that he was going to shoot.  A bullet was then shot

---

[1] This summary is derived from the factual background set forth in the appellate briefs and the evidence adduced at trial.

through the office door.  Hodges dropped the phone and fled through an exterior door accessible from the office.  She ran to a neighboring residence and again called police. Pereira, who had escaped through the front door, heard three shots as she ran.  Seeking help from drivers on 4th Street North, Pereira observed Hamlett leave the store and cross the street into a parking lot.  She then saw a car pull out of the parking lot.  Both Hodges and Pereira later identified Hamlett's photo as that of the man in the store.  They also made in-court identifications of Hamlett during trial.

## DISCUSSION

### I. Ground Four of Hamlett's Federal Habeas Petition

Hamlett raises a claim of ineffective assistance of trial counsel in Ground Four. He brought this claim in his postconviction motion, and the state postconviction court denied it on the merits.  The state appellate court *per curiam* affirmed the denial of this claim.

### Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The

phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster,* _U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion, the state district court of appeal affirmed the denial of Hamlett's postconviction motion. The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 131 S. Ct. at 1398.   Hamlett bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).   The state court's rejection of Hamlett's postconviction motion warrants deference in this case.

### Standard For Claims Of Ineffective Assistance Of Counsel

Hamlett asserts ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and

> well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.   According to *Strickland*, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).   In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."   *Strickland*, 466 U.S. at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."   466 U.S. at 690.   Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   466 U.S. at 690.

Hamlett must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."   466 U.S. at 691-92.   To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Counsel's strategic choices "made after thorough investigation of law and facts

relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."   466 U.S. at 690-91.   A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address

both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

**Ground Four**

Hamlett asserts that trial counsel provided ineffective assistance when he did not effectively cross-examine witness Lisa Hodges regarding her prior inconsistent testimony about the 911 call she made from the Payday Now office.  Hamlett alleges that during her deposition and a pre-trial motion to suppress, Hodges testified to specific statements she made to the 911 operator.  He states that Hodges provided no such testimony at trial, and that the evidence adduced at trial shows Hodges did not actually speak to the 911 operator.  Thus, he asserts, Hodges's prior testimony was not true.  Hamlett claims that counsel's deficiency deprived him of a fair trial because Hodges's credibility went unchallenged.  Hamlett further states that the outcome of trial would have been different but for counsel's ineffective assistance.

Hamlett raised this claim of ineffective assistance of counsel in ground twenty-one of his postconviction motion.  The state postconviction court summarily denied the claim:

> The Defendant alleges that counsel was ineffective for failing to effectively cross-examine victim Lisa Hodges regarding her deposition testimony and testimony at the hearing on the motion to suppress, which the Defendant claims was false.  Specifically, the Defendant claims that the 911 audio tape and CAD notes of the 911 audio tapes show that someone telephoned the police during the robbery but dropped the phone before shots were fired.  The Defendant claims Ms. Hodges testified that she was on the phone speaking with the police when the shot was fired, which is contrary to the 911 audio tape.
>
> The Defendant fails to establish that he was prejudiced.  Ms. Hodges testified that she made a second call to police from a residence a short distance from the business after she escaped the building and spoke with the police.  Whether or not she actually spoke with police during the initial

911 call is inconsequential in light of the fact that a call was received by a 911 operator from the back office [of] Payday Now moments before the Defendant shot through the door.  If Ms. Hodges was incorrect about whether she actually spoke with police or instead recalled what she intended to say to police had she had the opportunity is irrelevant.  This claim is denied.

(Ex. 17, p. 327) (court's record citation omitted)

Hodges testified at trial that she called 911 when she was in the Payday Now office:

Q:     . . . [W]hat did you do?

A:     I slammed the door.

Q:     The door that was between where, the office and - -

A:     It would have been like right here.  It's the door between the office and the lobby.

Q:     And you slammed it shut?

A:     Yes.

Q:     And what did you do as soon as you did that?

A:     I called the police while I was watching the monitor.

. . . .

Q:     And did you call 911?

A:     Yes.

Q:     And is there a point in time when you were on the phone with them?

A:     Yes.

Q:     And what happened when you were on the phone?

A:     I was on the phone with the police, and the next thing, you know, the guy was grabbing on the door, grabbing on the door, saying open up the door, open up the door, I'm getting ready to shoot.  And then like right after he said that, that's when I seen one shot.  I seen one shot - - one shot go that [sic] lobby door.

. . . .

Q:      Now, after you saw that first bullet shot through the wall through the
        door, what did you do next?

A:      I dropped the phone and then I ran out the back door.

(Ex. 1, Vol. V, pp. 175-79.)

The 911 call was played at trial.[2]  The 911 operator's notes, which were introduced

at trial, indicated that no one was talking to the operator but that the operator heard four

shots and someone yelling to open the safe.  (Ex. 1, Vol. III, pp. 365-66; Ex. 1, Vol. VI, p.

370.) During her deposition and the motion to suppress hearing, Hodges recounted talking

with the 911 operator during the call.[3]

---

[2] The trial transcript reflects the following when the 911 call was played for the jury:

> (Whereupon, the following 911 tape was played.)
> St. Pete Police. Somebody has been shot.  Okay.  I have a person who's shot.  Hello.
> And there's shots.   I heard four shots on the phone.   Hello.   Hello.   Open the safe.
> Somebody is yelling open the safe. Hello.  I ain't talked to nobody yet.  Hello.  Hello.  Hello.
> Hello.  Hello.  Hello.  Hello.  Hello.  Hello.
> Lisa.  Hello.  Lisa.  Lisa.  Oh, my Lord.  Hello.  Hello.  Lisa.  Lisa.  Hello.  Okay.  You
> work here?  Yes.  And is anybody in there?  I can't go in there.  I have a coworker.  And what
> is her name?  Her name is - - hello.  Lisa.  Lisa.  Lisa.  Oh, my God.  Lisa.  Lisa.  Lisa, are
> you here?  Hello.   What does he look like?  Is he white or black?  Lisa.  Lisa.  Lisa.  Okay.
> Hello.  Okay.  Hello.  Where is the mother?  Okay.  Hello.  Hello.  Hello.  Hello.  Hello.
> (Whereupon, the 911 tape was concluded.)

(Ex. 1, Vol. IV, p. 99.)  The prosecutor informed the court that it was Rosa Pereira's voice at the end of the
tape and that Pereira was yelling for Lisa Hodges when Pereira later returned to the building.  (Id., p. 95.)

[3] During the motion to suppress hearing, Hodges testified about what took place while she was in the
Payday Now office:

Q:      Okay.  So then what happened?

A:      So at the same time he's yanking on the door, I'm on the phone with the police,
        telling them that somebody's trying to rob the store.  Somebody's trying to rob the
        store.  Could you please send somebody to come out here and help?  Somebody's
        trying to rob the store.

        And then all I hear is, Open up the door.  Open up the door.  I'm fixing to shoot.  And

(continued...)

The state court determined that Hamlett could not show prejudice because whether Hodges spoke during the initial 911 call was inconsequential.   The record supports this conclusion.   Hodges testified at trial that when she was in the office, she called 911; that she heard the gunman demand that the door be opened and state he would shoot; and that a shot was fired into the office.   Hamlett does not state that Hodges gave prior inconsistent testimony on these matters, which were relevant to establishing the elements of the crimes.   Further, Hodges's testimony is supported by evidence reflecting that a 911 call, which contained the sounds of gun shots and someone yelling to open the safe, was received.   Thus, what Hodges said or did not say to the 911 operator was not critical to the State's case.

Moreover, Hamlett's claim that the jury would have found Hodges not to be credible had counsel cross-examined her regarding her prior testimony cannot warrant federal habeas relief because it is entirely speculative.   *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).   Even assuming counsel impeached Hodges

---

[3](...continued)
        then like a second later I seen the shot.

(Ex. 1, Vol. II, p. 177.)

Hodges testified during her deposition:

I got on the phone with the police, and I told them there's a guy in the store.  He's very obnoxious, and he's fixin' to kill somebody.  He's trying to rob us.  She was like, be calm, be patient with us.  I'm going to send the police out there.  He shot one fire.  When he shot that one fire, I was like, ma'am, he's shooting.  Could you please have a police officer come out here quick, because this guy is serious.  Then he shot again.  When he shot the second time, I ran out.

(Ex. 1, Supp. III, p. 632.)

regarding the content of the 911 call, Hamlett fails to show that this would have diminished the weight of the evidence of guilt such that the outcome of trial likely would have been different.[4]  Hamlett fails to establish that he was prejudiced when counsel did not cross-examine Hodges regarding her prior testimony.  *See Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) ("Absent a showing of 'a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial,' the petitioner is unable to show prejudice necessary to satisfy the second prong of *Strickland*.") (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)).  Accordingly, Hamlett does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  Ground Four provides no relief.

## II. Grounds One, Two, and Three of Hamlett's Federal Habeas Petition

Hamlett also raises claims of ineffective assistance of trial counsel in Grounds One, Two, and Three.  However, these claims are barred from federal habeas review.  They are procedurally defaulted and, as discussed below, Hamlett's reliance on *Martinez v. Ryan*, _ U.S. _, 132 S.Ct. 1309 (2012) to overcome the default must fail.

### Exhaustion of State Remedies; Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner

---

[4] Hamlett appears to argue that Hodges's credibility was critical because she was the only witness who could testify that she was still inside the office when the first shot went through the office door, which supports the charge of attempted second degree murder.  However, Hodges consistently testified during her deposition, the motion to suppress hearing, and trial that she was in the office when the shooting began. (Ex. 1, Vol. II, pp. 175-177;  Ex. 1, Vol. V, pp. 175-79; Ex. 1, Supp. III, pp. 628-32.)

must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal

nature of the claim.   28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

Because Hamlett did not raise these claims of ineffective assistance of trial counsel in his postconviction motion, they are unexhausted.   The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).   Hamlett cannot return to state court to file a successive, untimely postconviction motion.   *See* Fla. R. Crim. P. 3.850(b),(h). Therefore, his claims are procedurally defaulted.

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999).   *See also Murray v. Carrier*, 477 U.S. 478 (1986).   To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982).   The petitioner must show at least a reasonable probability of a different outcome.   *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

As a general rule, ineffective assistance of postconviction counsel does not constitute cause to excuse a procedural default because there is no constitutional right to counsel in state collateral proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 753-55

(1991).  But the Supreme Court has recognized a narrow, equitable exception to *Coleman*:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 S.Ct. at 1320.   In *Martinez*, the Supreme Court provided that the exception is available when a criminal defendant is required to raise ineffective assistance of trial counsel claims in a collateral proceeding, as opposed to on direct appeal.  132 S.Ct. at 1318.   This exception has been extended to situations in which, even if a state's procedures technically permit a defendant to bring a claim of ineffective assistance of trial counsel on direct appeal, in practice, it is highly unlikely a defendant can do so.  *Trevino v. Thaler*, _U.S._, 133 S.Ct. 1911 (2013).  Thus, the *Martinez* exception applies "where . . . state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."  *Trevino*, 133 S.Ct. at 1921.

Hamlett relies on *Martinez* in asserting cause to overcome the default of his ineffective assistance of trial counsel claims, stating that he was not represented by counsel during his state postconviction proceedings.  Notwithstanding the applicability of the other circumstances set forth in *Martinez*, Hamlett must show that his defaulted claims of ineffective assistance of trial counsel are "substantial."  The Eleventh Circuit Court of Appeals has explained this requirement:

*Martinez* articulated the "substantial claim" requirement as follows:

> To overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.  *Cf. Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

*Martinez*, – U.S. at –, 132 S.Ct. at 1318-1319.  Neither *Martinez* nor *Trevino* elaborated on or applied this standard, but we take the Court's reference to *Miller-El* to mean that it intended that lower courts apply the already-developed standard for issuing a COA, which requires "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

As the Court explained in *Miller-El*, "[a] petitioner satisfies this standard by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." 537 U.S. at 327, 123 S.Ct. at 1034. Where a petitioner must make a "substantial showing" without the benefit of a merits determination by an earlier court, he must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). That does not mean that a petitioner must show "that some jurists would grant the petition." *Miller–El*, 537 U.S. at 338, 123 S.Ct. at 1040. "[A] claim can be debatable even though every jurist of reason might agree, after the . . . case has received full consideration, that petitioner will not prevail." *Id*.

We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings. Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that point to a real possibility of constitutional error." Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).

Thus, we examine the allegations in [the petitioner's] proposed second amended § 2254 petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." In making this determination, we consider the fact-pleading requirement for § 2254 petitions, and the standard from *Strickland*.

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014) (footnote omitted).[5]

Hamlett's defaulted claims of ineffective assistance of trial counsel are reviewed to determine whether they are "substantial" claims in accordance with *Martinez*.

## Analysis

### Ground One

Hamlett argues that trial counsel was ineffective for not moving for a mistrial when, during the testimony of State witnesses Pereira and Hodges and defense witness Jeffrey Peet, the prosecutor asked questions referring to the suspect as "the Defendant" although the witnesses had not yet identified Hamlett.[6]  He contends that the State "intentionally relieved itself of the burden of having to prove that it was the defendant who committed the crime because both witnesses for the State Pereira and Hodges made in-court identifications of the defendant <u>after</u> they were told by the prosecutor it is the defendant they were talking about" and that this created a presumption of guilt.  (Doc. 1, p. 8.) Hamlett asserts that a motion for mistrial would have been granted.  He points to a sidebar during Pereira's testimony where the court cautioned the prosecutor about referring to the suspect as "the Defendant" before Pereira had identified Hamlett.  (Ex. 1, Vol. IV, pp. 97-98.)  Hamlett further contends in support of his claim that counsel's failure to move for a mistrial due to the State's improper burden shifting resulted in violations of his rights to due process and a fair trial.

---

[5] With regard to the fact-pleading requirements for § 2254 petitions, the Court in *Hittson* further noted that under Rule 2(c), Rules Governing Section 2254 Cases, petitioners must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  *Hittson*, 759 F.3d at 1265.

[6] Pereira and Hodges made in-court identifications of Hamlett.  (Ex. 1, Vol. IV, p. 111; Ex. 1, Vol. V, p. 190.)  Peet, who testified that he was driving on 4th Street North shortly after the approximate time of the offense when a man passed by close to his car, did not identify Hamlett.  (Ex. 1, Vol. VII, pp. 446-53.)

Hamlett does not establish that he was prejudiced by counsel's failure to move for a mistrial on this basis.  A prosecutor "must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence."  *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992).  When such an argument "permeates the entire atmosphere of the trial," reversal for prosecutorial misconduct is warranted.  964 F.2d at 1086 (internal quotation marks omitted).  However, the prejudice from burden-shifting comments "can be cured by a court's instruction regarding the burden of proof."  964 F.2d at 1087.

Hamlett does not demonstrate that the prosecutor's questions suggested he was required to put on evidence or prove his innocence, or otherwise diminished the State's burden to prove his guilt as to every element of the offenses.[7]   Hamlett also fails to offer evidence establishing that the in-court identifications made by Hodges and Pereira were based on any factor other than their independent recollections.  Thus, he cannot show that a motion for mistrial based on the phrasing of some of the prosecutor's questions likely would have succeeded.  A mistrial is to be granted only when required to sustain the fairness of the proceedings.  *See  Dessaure v. State*, 891 So.2d 455, 464-65 (Fla. 2004) ("An order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial."); *Snipes v. State*, 733 So.2d 1000, 1005 (Fla. 1999) ("A decision on a motion for a mistrial is within the discretion of the trial judge and such a

---

[7] The trial court instructed the jury that "[t]o overcome the Defendant's presumption of innocence, the State has the burden of proving the crime with which the Defendant is charged was committed and that the Defendant is the person who committed the crime.  The Defendant is not required to present evidence or prove anything."  (Ex. 1, Vol. VIII, p. 648.)

motion should be granted only in the case of absolute necessity.").   Accordingly, Hamlett

does not show prejudice as a result of counsel's conduct.

Hamlett does not show that jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right.  *See Hittson*, 759 F.3d at

1270.  Accordingly, he fails to demonstrate that his defaulted claim of ineffective assistance

of trial counsel is "substantial."  Thus, *Martinez* does not apply to overcome the procedural

default.

**Ground Two**

Hamlett asserts that trial counsel was ineffective for failing to secure his presence

during two critical stages of the proceedings, contrary to Hamlett's Fifth Amendment rights.

A criminal defendant "is guaranteed the right to be present at any stage of the criminal

proceeding that is critical to its outcome if his presence would contribute to the fairness of

the procedure."  *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).

Hamlett argues that counsel should have ensured he was present at the sidebar

during Pereira's testimony when the trial court cautioned the prosecutor about referring to

the suspect as "the Defendant."  Hamlett asserts that counsel inaccurately told him what

was discussed at the sidebar.  Hamlett also argues that counsel should have secured his

presence at a pre-trial hearing on his motion to approve costs for a handwriting expert.

When Pereira and Hodges identified Hamlett's photograph from photopacks during the

investigation, they signed, initialed, and wrote the word "positive" on the photopacks.

Hamlett asserts that he wanted the handwriting analyzed to determine if it truly belonged

to these witnesses.  Hamlett appears to theorize that a police officer may have forged the

witnesses' handwriting.

Hamlett states that he was absent from the hearing on his motion.  Hamlett claims that counsel lied to him about the proceedings, stating that he forgot to file a motion and that the court would not grant any funds for the expert.  Hamlett states that he later learned the motion was granted and funds were provided, but that the handwriting was never analyzed.[8]

In alleging prejudice, Hamlett argues that if he had been present for these proceedings, he would have realized that counsel was performing deficiently.  Hamlett specifically asserts that if he was present during the bench conference, he would have moved for counsel to be dismissed, and would have either "obtained a[n] attorney who was willing to object and move for mistrial due to the State creating a presumption that the defendant had already been found guilty" or proceeded *pro se* and moved for a mistrial.  (Doc. 1, pp. 15-16.)  Hamlett asserts that if he had been present at the hearing on his motion to approve costs for a handwriting expert, he would have obtained substitute counsel who would have ensured the handwriting analysis was performed.  (Doc. 1, p. 15.)[9]

Hamlett's claim of ineffective assistance of trial counsel is not "substantial" because

[8] Hamlett alleges that cause to overcome the default of his ineffective assistance of trial counsel claim exists because the Clerk of the Circuit Court failed to include a transcript of this hearing in the record on direct appeal.  He states that he was therefore unaware of the occurrence or outcome of the hearing.  This circumstance is not provided for in the narrow exception outlined in *Martinez*.  As Hamlett also argues that cause is established because he did not have postconviction counsel, however, Ground Two is reviewed to determine if his defaulted claim of ineffective assistance of trial counsel is a substantial claim.

[9] The documentation Hamlett attaches to his federal habeas petition suggests that the handwriting analysis may have been performed, but that the results did not support his theory.  Hamlett attaches copy of a document examination report prepared by Ray Green & Associates providing that three documents, each of which is described as a "[p]hotocopy of a photo pack,"  were examined in an "[a]ttempt to determine if the questioned writing . . . were executed by the same writer." (Doc. 1-2, p. 39.)  The report concludes that "[w]ith the material available for examination, the evidence is consistent with all three separate questioned documents having been executed by three different authors."  (Id.)  Pereira and Hodges testified at trial that they initialed and signed the photopacks.  (Ex. 1, Vol. IV, pp. 108-09; Ex. 1, Vol. V, pp. 188-89.)

he does not sufficiently allege prejudice under *Strickland*.   Specifically, Hamlett fails to allege that there is a reasonable probability the outcome of the proceedings would have been different but for counsel excluding him from the sidebar and the pre-trial hearing. He only alleges that he would have obtained substitute counsel or elected to proceed *pro se*. Because he does not allege facts sufficient to show prejudice under *Strickland*, Hamlett has not presented a "substantial" claim.  *See Hittson*, 759 F.3d at 1271 ("Because Hittson has not alleged any facts to warrant a finding of *Strickland* prejudice, his . . . claim is not 'substantial.'").

Accordingly, Hamlett does not show that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.  *See Hittson*, 759 F.3d at 1270.  Because he fails to demonstrate that his defaulted claim of ineffective assistance of trial counsel is a "substantial" claim, Hamlett cannot rely on *Martinez* to overcome the procedural default.

**Ground Three**

Hamlett states that counsel was ineffective for not asserting a defense that the State failed to present sufficient evidence of all the elements of the charged offenses.[10]  He claims that counsel's ineffective assistance resulted in violations of his rights to due process and a fair trial.

First, Hamlett asserts that counsel should have argued the State failed to prove the elements of attempted robbery because there was no evidence that the suspect ever

---

[10] Hamlett presented a misidentification defense at trial. Following the State's case, counsel moved for a judgment of acquittal.  Counsel argued that "the State has not met a prima facie case by putting on evidence that showed Mr. Hamlett was, in fact, the shooter that day." (Ex. 1, Vol. VI, p. 395.)

asked Lisa Hodges for money. He claims that if counsel had raised this argument, he would not have been convicted of attempted robbery. The state trial court instructed the jury on the crime of robbery, and then provided an instruction on attempt. The court told the jury that to prove robbery, the State must show that Hamlett (1) took U.S. currency from the person or custody of Pereira or Hodges; (2) force, violence, assault, or putting in fear was used against Pereira or Hodges in the course of the taking; (3) the U.S. currency taken was of some value; and (4) the taking was with the intent to permanently or temporarily deprive Payday Now of its right to the property or any benefit from it or to appropriate the property of Payday Now to Hamlett's own use or the use of any person not entitled to it. (Ex. 1, Vol. II, pp. 263-66; Ex. 1, Vol. VIII, pp. 632-35.) *See* § 812.13, Fla. Stat.; Fla. Std. Jury Inst. (Crim.) 15.1. The jury was instructed that, to prove attempt, the State must show that Hamlett (1) did some act toward committing the crime of robbery that went beyond just thinking or talking about it; and (2) Hamlett would have committed the crime except that someone prevented him from doing so, or he failed. (Ex. 1, Vol. II, p. 267; Ex. 1, Vol. VIII, p. 635.) *See* § 777.04(1), Fla. Stat.; Fla. Std. Jury Inst. (Crim.) 5.1.

The evidence at trial established that Hamlett entered Payday Now, asked Pereira about cashing a check, drew a firearm, and demanded that the safe and office be opened. Shots were then fired through the office door. In a § 2254 proceeding, a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Given the evidence at trial, Hamlett fails to establish that no rational trier of fact could find him guilty of attempted robbery beyond a reasonable doubt. Thus, he does not show trial counsel performed deficiently for not

arguing that the State presented insufficient evidence, or that there is a reasonable probability the outcome of trial would have been different had counsel done so.

Hamlett also contends that counsel should have argued the State failed to present sufficient evidence of attempted second degree murder because no witness saw the suspect aim or intentionally discharge the firearm.  Hamlett asserts that if counsel had done so, he would not have been found guilty of this offense.

To prove attempted second degree murder, the State was required to show that Hamlett (1) intentionally committed an act which would have resulted in the death of Hodges except that someone prevented Hamlett from killing Hodges, or Hamlett failed to do so, and (2) the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life.  (Ex. 1. Vol. II, pp. 280-81; Ex. 1, Vol. VIII, p. 643.)  *See* §§ 782.04(2), 777.04(1), Fla. Stat.; Fla. Std. Jury Inst. (Crim.) 6.4.  To establish the second element, the State was required to prove that the act committed by Hamlett was one that (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; (2) was done from ill will, hatred, spite, or an evil intent; and (3) was of such a nature that the act itself indicates an indifference to human life.  (Ex. 1, Vol. II, p. 280; Ex. 1, Vol. VIII, p. 643.)  *See* § 782.04(2), Fla. Stat.; Fla. Std. Jury Inst. (Crim.) 6.4.

The evidence at trial established that during the attempted robbery, Hamlett sought access the office and the safe.  After Hamlett was told that the safe was behind the door, he indicated that he was going to shoot, and shot was fired through the closed office door while Hodges was inside the office.  Under these circumstances, Hamlett fails to establish

that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.[11]

Hamlett cannot show that trial counsel was deficient for not asserting that the State failed

to prove attempted second degree murder, or that there is a reasonable probability raising

such an argument would have changed the outcome of trial.   His assertion that Hodges's

credibility was at issue because of her allegedly inconsistent testimony concerning the 911

call is irrelevant to, and does not change, this conclusion.

Hamlett does not establish that trial counsel performed deficiently in not arguing that

the State failed to show the elements of attempted armed robbery and attempted second

degree murder, or that he was prejudiced by counsel's performance.   He does not show

that jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right.   *See Hittson*, 759 F.3d at 1270.   He fails to demonstrate that

his procedurally defaulted claim of ineffective assistance of trial counsel is a "substantial"

claim.   Accordingly, *Martinez* does not apply to overcome the default.

Because Hamlett does not raise "substantial" claims of ineffective assistance of trial

counsel in Grounds One, Two, and Three, under *Martinez*, he does not demonstrate that

the cause and prejudice exception applies to excuse the procedural default of these

claims.   Absent the applicability of the cause and prejudice exception, a federal habeas

petitioner may also obtain review of procedurally defaulted grounds if review is necessary

to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451

(2000); *Carrier*, 477 U.S. at 495-96.   A fundamental miscarriage of justice occurs in an

---

[11] To the extent Hamlett's argument that there was no evidence he aimed or intentionally discharged the weapon may be construed as asserting that there was no evidence he intended to kill Hodges, it does not support his ineffective assistance of trial counsel claim.   The court instructed the jury that the State was not required to show that Hamlett had an intent to cause death.   (Ex. 1, Vol. II, p. 281; Ex. 1, Vol. VIII, p. 643-44.) *See* § 782.04(2), Fla. Stat.; Fla. Std. Jury Inst. (Crim.) 6.4.

extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Hamlett does not allege or demonstrate that the fundamental miscarriage of justice exception applies to allow review of the claims.  He is unable to overcome the procedural default of Grounds One, Two, and Three.   Therefore, the allegations of ineffective assistance of trial counsel presented in these grounds are barred from federal habeas review.

It is therefore ORDERED that Hamlett's petition for writ of habeas corpus (Doc. 1) is DENIED.  The Clerk is directed to enter judgment against Hamlett and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Hamlett is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  *Id*.  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id*. at § 2253(c)(2).  To make such a showing, Hamlett "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S.

473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Hamlett has not made the requisite showing in these circumstances.

Finally, because Hamlett is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED in Tampa, Florida, on April 22, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Shawn Hamlett
Counsel of Record